# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
|     *Respondent*, | ) | |
| | ) | |
|     v. | ) | Case No: 16 C 50004 |
| | ) | |
| Steven T. McDowell, | ) | |
| | ) | |
|     *Movant*. | ) | Judge Frederick J. Kapala |

## ORDER

McDowell's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1] is denied. Motions for leave to seek discovery [9] [11] are denied. Certificate of appealability is denied. This case is closed.

## STATEMENT

In June 2012, a jury convicted Steven T. McDowell of conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841 & 846. He is currently serving a 252-month sentence.[1] Before the court is McDowell's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons which follow, the motion is denied.

## I. BACKGROUND

Two co-defendants, Robert Presley and Jeremy Cooper, were also found guilty of conspiracy to distribute heroin at the conclusion of the jury trial. Two other co-defendants, McDowell's brother Murray Harris and Norman Breedlove, pled guilty to the heroin conspiracy charge prior to trial, each admitting that he conspired with his co-defendants to distribute more than a kilogram of heroin.[2]

Under the terms of his plea agreement, Breedlove agreed to provide complete and truthful testimony at the trial of his co-defendants and the government agreed to move for a departure from the guidelines range and statutory minimum sentence and to recommend a sentence of ten years. At trial, Breedlove testified that, beginning in June 2010, McDowell began selling him $500 worth of heroin for $350 twice a week. In mid-July, McDowell told Breedlove that he was stepping away from selling drugs and that Breedlove should buy from Harris in the future. From then on, Breedlove got most of his heroin from an apartment at 501 Longwood Street in Rockford where he

---

[1] McDowell's sentence was reduced from 315 months to 252 months on September 23, 2015, pursuant to 18 U.S.C. § 3582(c)(2).

[2] Another co-defendant, Melvin Jordan, was acquitted of aiding and abetting the conspiracy.

often saw individuals preparing the drugs under the supervision of Harris, Presley, and Cooper. During some of his visits to Longwood, Cooper or Presley retrieved Breedlove's heroin at Harris's direction, but usually Harris handled Breedlove's heroin transactions. On occasions when Breedlove was not satisfied with the product, McDowell got involved, promising to "fix the problem" by ensuring Breedlove got better heroin. In late October, after Breedlove had received another bad batch of heroin from Harris, McDowell told Breedlove he was stepping back in to handle the heroin sales and was on his way to buy some heroin. McDowell later sold heroin to Breedlove and gave him a free pack to make up for the bad product Breedlove had received from Harris.

In addition to Breedlove's testimony implicating his co-defendants in the heroin distribution conspiracy, other testimony established its existence and McDowell's participation. Detective Gabe Wassner testified that he bought fifteen bags of heroin from Breedlove which led him to McDowell. McDowell sold Wassner's informant twenty-one bags of heroin and told him to have Wassner come directly to McDowell when Wassner needed more heroin. The informant testified that McDowell also told him that, if McDowell's runners were unable to provide him heroin, he should call one of five other individuals involved in selling heroin. Detective Wassner subsequently purchased heroin from McDowell and Harris making two purchases in October, two in November, and one in December. For each of these purchases, he negotiated the price with McDowell and received the heroin from Harris, who was often driven to the pickup spot by McDowell or someone driving McDowell's car.

McDowell's mother, Donia McDowell, denied making statements to law enforcement agents on December 2, 2012, indicating that McDowell, Presley, Cooper, and Harris were engaged in a heroin distribution conspiracy. She also denied, or said she could not recall, making similar statements while under oath before the grand jury. The court admitted as substantive evidence Donia's grand jury testimony in which she stated that she overheard her son Steven discuss purchasing drugs from Chicago twice a week with Cooper, Harris, and Presley, and she estimated that they bought about $1500 worth of drugs per trip. Donia testified that McDowell financed the heroin purchases while Cooper, Presley, and Harris sold the drugs. According to Donia, this drug activity continued through the summer, with McDowell, Cooper, Harris, and Presley using her apartment to mix and package the heroin, and selling it from the apartment and its parking lot. Donia also indicated that on December 1, 2010, there was a shootout at 501 Longwood.

Vaughn Johnson lived in another apartment at 501 Longwood. At trial, he denied knowing anything about Presley, Cooper, and McDowell selling drugs but acknowledged that he probably said so in his grand jury testimony. Rodney Love testified that in November 2010 he would regularly visit Johnson at his apartment and that McDowell, Presley, and Cooper were engaged in a heroin business at 501 Longwood. Love testified that McDowell began selling heroin on a small scale a year earlier, but by November 2010, he had "got[ten] big and had people working for him."

Other evidence showed that a search warrant executed in October 2010 at 1209 Chestnut Street in Rockford, which Frank and Paul Freeman rented to Presley to sell heroin, led to the recovery of quantities of heroin and a loaded handgun. Documents with McDowell's, Presley's, and Cooper's name on them were recovered from a black Dodge Charger located at that address including the rental agreement for that vehicle in McDowell's name.

The day after the December 1, 2012 shootout at 501 Longwood, which was the result of a

dispute between Presley and Cooper on the one hand and a heroin customer's son on the other, Presley and Cooper were arrested in the parking lot of the hotel where they were staying. Just prior to the arrest, officers observed a green Toyota carrying Presley and Cooper deliver heroin to an informant in a Walmart parking lot. The green Toyota was also rented by McDowell and when Presley and Copper were arrested at the hotel they were in the same Toyota. Inside, officers discovered a firearm later determined to have been discharged at the Longwood shootout. In Cooper's hotel room, police located heroin, cash, firearms, a camera, and an insurance card in McDowell's name. Videos and photographs recovered from the camera showed large sums of money in the room and Cooper and his girlfriend in the black Dodge Charger rented by McDowell. A search of Presley's room revealed an AK-47 rifle, the loaded magazine for that rifle, bottles of lactose, two magic bullet grinders, a razor blade, a box of sandwich bags, latex gloves, a digital scale, the box from a bottle of Dormin pills, $620, Western Union receipts in Presley's name, and court paperwork in Presley's name indicating that he was driving the black Dodge Charger rented by McDowell when he was arrested for DUI on November 5, 2010.

During his case, McDowell took the stand and admitted to the six individual deliveries of heroin with which he was charged in Counts III, IV, X, XI, XIV, and XXII. He also admitted to conspiring with his brother Harris to distribute heroin but denied joining the larger conspiracy with Cooper and Presley. The jury returned its verdicts on June 14, 2012.

On August 16, 2012, Breedlove's attorney filed a "motion for mental examination of the defendant" in which he averred that Breedlove had recently begun "exhibiting signs of paranoid delusions." The court granted the motion in September 2012. In October 2012, Presley filed a supplemental motion for a new trial in which he claimed that sometime in mid-July when he and Breedlove were confined together he asked Breedlove why Breedlove testified against him and Breedlove said, "I know you wasn't part of the conspiracy" and "I don't even know you like that." Presley claimed further that Breedlove said that he only testified against him because the "government kept threatening me with natural life for that girl's death" and that the "government forced my hand by threatening me with life." The court stayed the proceedings on Presley's supplemental motion for new trial until Breedlove's competency could be determined.

On February 6, 2013, this court found that Breedlove suffered from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Consequently, this court committed Breedlove to the custody of the United States Attorney General to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity to permit the proceedings to go forward. McDowell was sentenced on February 7, 2013, and thereafter filed a notice of appeal.

On October 21, 2013, this court granted the Bureau of Prison's ("BOP") request to involuntarily medicate Breedlove in order render him competent to be sentenced.[3] On June 3, 2014, at Presley's request, this court lifted the stay on the proceedings and denied Presley's supplemental

---

[3]On February 10, 2016, this court found that Breedlove had recovered to such an extent that he is able to understand the nature and the consequences of the proceedings against him and to properly assist at sentencing and discharged him from his mental health commitment. Breedlove is now awaiting sentencing.

motion for new trial. This court found that there was insufficient evidence upon which to conclude that Breedlove was incompetent at the time of the trial. This court concluded, however, that "even assuming that Breedlove was not competent to proceed with his own case at the time he testified at the trial of his co-defendants, that does not disqualify him as a witness or demonstrate that he was incapable of telling the truth and of appreciating the significance of his oath as a witness." This court concluded further that the sheer volume of evidence against Presley and his co-defendants rendered harmless any error in failing to recognize any incompetence on Breedlove's part during his trial testimony. The Seventh Circuit subsequently affirmed these rulings. United States v. Presley, 790 F.3d 699, 700-01 (7th Cir. 2015) ("The judge's rulings on the Breedlove matter were sound.").

McDowell's appeal was consolidated with the appeal of co-defendant Cooper. The Seventh Circuit affirmed McDowell's conviction and sentence after rejecting his appellate contentions that: (1) there was insufficient evidence to support his conspiracy conviction; (2) the district court erred in finding that the conspiracy distributed more than one but less than three kilograms of heroin while he was a member; and (3) two sentencing-guidelines enhancements were improperly applied. United States v. Cooper, 767 F.3d 721, 734 (7th Cir. 2014). In his writ of certiorari, McDowell presented the following issue to the United States Supreme Court: "Does the Sixth Amendment's Confrontation Clause permit introduction of a witness's prior grand jury testimony as substantive evidence of an accused's guilt when the witness testifies at trial that she has no current recollection that is responsive to a question?" The United States Supreme Court denied McDowell's petition for a writ of certiorari on January 12, 2015. McDowell timely filed the instant § 2255 motion on January 6, 2016.

## II. DISCUSSION

Relief under § 2255 is "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, habeas relief under § 2255 is "reserved for extraordinary situations." Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996). "To succeed on a § 2255 petition a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." Id.

### A. Ineffective Assistance of Counsel

To succeed on an ineffective-assistance-of-counsel claim, a movant must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). To satisfy the first prong, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A district court's "analysis begins with the strong presumption that the defendant's attorney rendered adequate representation of his client." United States v. Meyer, 234 F.3d 319, 325 (7th Cir. 2000) (quotation marks omitted). Therefore, petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. Shell v. United States, 448 F.3d 951, 955 (7th Cir. 2006). If a defendant is unable to satisfy either prong of the Strickland test, then the court does not need to

4

address the matter further. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The Seventh Circuit has long held that "[c]ounsel is not ineffective for failing to raise meritless claims." Warren v. Baenen, 712 F.3d 1090, 1104 (7th Cir. 2013); see also Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). In turn, there can be no resulting prejudice from a failure to raise a meritless issue on appeal. Martin v. Evans, 384 F.3d 848, 852 (7th Cir. 2004).

### 1. Confrontation Clause

McDowell claims that his counsel was ineffective in failing to protect his Sixth Amendment confrontation rights when he did not object to the court's substantive admission of various trial witnesses' grand jury testimony as prior inconsistent statements pursuant to Federal Rule of Evidence 801(d)(1)(A). In rejecting McDowell's appellate contention that the trial evidence was insufficient to support a conspiracy conviction, the Seventh Circuit addressed the propriety of admitting the grand jury testimony of Donia McDowell. After citing United States v. DiCaro, 772 F.2d 1314 (7th Cir. 1985), the Seventh Circuit concluded that "there was no problem with the court's admission of Donia's grand jury statement as substantive evidence at trial." Cooper, 767 F.3d at 728. In the instant proceedings, McDowell contends that his inability to cross-examine Donia McDowell and other witnesses when they testified before the grand jury violated his confrontation rights as espoused in Crawford v. Washington, 541 U.S. 36 (2004).

Crawford was the law at the time the Seventh Circuit affirmed McDowell's conviction and when the Supreme Court denied McDowell's petition for a writ a certiorari in which he raised this very argument. However, Crawford did not impact those decisions because there is no confrontation problem where the witness is available at trial and is subject to cross examination, even if the witness does not remember making the prior statement. Crawford, 541 U.S. at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."); see also Cookson v. Schwartz, 556 F.3d 647, 651-52 (7th Cir. 2009); United States v. Beatty, 189 F. App'x 531, 533 (7th Cir. 2006) ("Beatty's argument that Crawford should be extended to prohibit the use of a witness's grand jury testimony to impeach her at trial would be frivolous. Ervin testified at Beatty's trial, obviating the concern expressed in Crawford regarding an unavailable witness."). Therefore, McDowell's trial counsel's performance was not deficient for failing to object to the admission of grand jury testimony because that objection would have been overruled as meritless. See Warren, 712 F.3d at 1104 ("Counsel is not ineffective for failing to raise meritless claims."). Moreover, McDowell suffered no prejudice as a result of his counsel's failure to raise this objection. See Martin, 384 F.3d at 852.

For these reasons, McDowell's counsel was not ineffective on the ground that he failed to object to the substantive admission of various trial witnesses' grand jury testimony.

### 2. Incompetent Witness

Next, McDowell contends that his trial counsel failed to exercise reasonable diligence to

5

discover that Breedlove suffered from a mental illness to such an extent that he experienced delusions, could not accurately perceive or recall events, and could not appreciate the requirement to testify truthfully. According to McDowell, Breedlove's statements and behavior indicated that he was laboring under some sort of mental defect to an extent that he was not competent to testify at the trial.

In denying Presley's supplemental motion for new trial, this court previously addressed whether there were any indications that Breedlove was suffering from a mental illness at the time he testified:

> Prior to August 16, 2012, when Breedlove's attorney filed a 'motion for mental examination of the defendant,' there was no indication that Breedlove was suffering from any mental disease or defect. In fact, thirteen days before Breedlove testified at his co-defendants' trial, Breedlove's attorney assured the court at Breedlove's change of plea hearing that 'Norman has I think an understanding and grasp of the issues involved, what he's charged with, the consequences of his plea, and I have no doubt he's competent and able to make a knowing and voluntary plea.' Based on this assurance and Breedlove's responses to the court's inquiries, this court found that Breedlove's guilty plea was knowing and voluntary. In fact, even the psychiatric experts who assessed Breedlove and later testified at his Sell hearing could not pinpoint the onset of Breedlove's inability to understand the nature and consequences of the proceedings against him or to assist properly in his defense. All they could say was that it most likely dated back ten to eleven months, but that it was possible that it dated back to 2008.

United States v. Presley, No. 10 CR 50078-3, Dkt. No. 497, at 7 (N.D. Ill. Jun. 3, 2014). These findings were affirmed by the Seventh Circuit. Presley, 790 F.3d at 700-01. McDowell's trial counsel cannot be faulted for failing to discover a mental illness that neither Breedlove's counsel nor the court detected. In addition, as set out in the next paragraph, there was nothing about Breedlove's trial testimony that indicated he was suffering from a mental illness.

In any event, as pointed out in this court's order denying Presley's supplemental motion for a new trial, even assuming that Breedlove suffered from a metal illness such that he was not competent to proceed with his own case at the time he testified at the trial of his co-defendants, that does not disqualify him as a witness or demonstrate that he was incapable of telling the truth and of appreciating the significance of his oath as a witness. See Fed. R. Evid. P. 601 advisory committee's note (noting that there is no mental capacity qualification for testifying as a witness).

The government cites to various portions of Breedlove's testimony where he demonstrates that he had the capacity to distinguish between lies and the truth and appreciated the significance of his oath:

> Q. What do you have to do in exchange for the government's motion that you receive a ten-year sentence?
>
> A. I have to tell the truth here today.
>
> Q. Does it matter whether anybody else is convicted for your deal?

6

    A. Not that I understand.

    Q. It's just you have to do what?

    A. I have to tell the truth here today.

    Q. Mr. Breedlove, have you done that?

    A. Yes.

    . . . .

    Q. And you would very much prefer to have ten years than to have the possibility of dying in federal prison?

    A. Yes.

    Q. So, you very much want this plea agreement to go through?

    A. Yes.

    Q. And you want the United States Attorney to believe that you told the truth?

    A. I am telling the truth.

    . . . .

    Q. But you expect us to believe and you expect the ladies and gentlemen of this jury to believe that you're not willing to lie to get this deal where you could be looking at life in prison?

    A. No, because I believe that the truth in this situation would benefit me. With a lie, I believe it would be easy for me to be caught up, and it would be plain to see.

The court agrees that these questions and answers are indicative of an understanding of the distinction between the truth and falsehood. Thus, Breedlove's testimony belies McDowell's claim that Breedlove lacked the capacity to testify truthfully. As the Seventh Circuit has stated, "[a]s long as a witness has the capacity to testify truthfully, it is best left to the fact-finder to determine whether he in fact did so." United States v. Snyder, 189 F.3d 640, 645 (7th Cir. 1999). Therefore, the record clearly shows that McDowell's counsel was not deficient in failing to discover that Breedlove had a mental illness causing him to lack the capacity to testify at trial.

    Moreover, McDowell has not demonstrated the requisite prejudice through a showing that the outcome of the trial would have been different had Breedlove been disqualified from testifying. This is not unexpected considering the sheer volume of evidence the government mounted against McDowell and his co-defendants, separate and apart from Breedlove's testimony. In denying Presley's supplemental motion for a new trial, this court found that the evidence presented at trial "was legion and it overwhelmingly established that between April 1, 2010 and December 8, 2010, [Presley], McDowell, Cooper, and Harris knowingly and intentionally agreed with one another, as well as with others, to possess and distribute heroin in Rockford." Presley, No. 10 CR 50078-3, Dkt. No. 497, at *10. That finding was affirmed by the Seventh Circuit, Presley, 790 F.3d at 700-01, and it remains true today.

    In particular, Detective Wassner made undercover purchases of heroin from Breedlove which

led him to McDowell who, along with Harris, also sold heroin to Wassner on multiple occasions in 2010. Significantly, either through their trial testimony or their grand jury testimony which was admitted substantively at trial, McDowell's own mother, her boyfriend Vaughn Johnson, and Johnson's friend Rodney Love all implicated McDowell as the leader and financier of a heroin distribution conspiracy that included Harris, Cooper, and Presley. Donia testified that she heard Cooper, McDowell, Presley, and Harris talk about buying drugs twice a week in Chicago and estimated that they bought $1500 worth each time for resale in Rockford. Throughout the summer of 2010, Donia saw Presley and Cooper mix and package heroine and sell it from a green Toyota rented by McDowell. A black Charger, also rented by McDowell, was used by Presley and Cooper and was present in October 2010 when a search warrant served at 1209 Chestnut Street led to the discovery that the residence was being rented by Presley and Cooper for the heroin distribution operation. Donia, Johnson, and Love also witnessed the December 1, 2010 shootout at 501 Longwood between Presley and Cooper on the one hand, and an individual whose firearms had been traded for drugs without his knowledge on the other. After selling heroin to an informant in a Walmart parking lot, Presley and Cooper were arrested the next day in the green Toyota rented by McDowell in the parking lot of their hotel. A forensic firearms examiner later determined that a handgun recovered from the Toyota was one of the weapons that left shell casings behind at 501 Longwood the day before. A search of Presley's and Cooper's hotel rooms revealed additional evidence of the heroin distribution conspiracy, including cash; a camera with photographs and video of Cooper and his girlfriend with immense sums of cash as well as the black Charger; weapons; and an insurance identification card in McDowell's name.

In the face of this overwhelming evidence independent of Breedlove's testimony, McDowell has failed to show that the outcome of the trial would have been different had his counsel successfully prevented Breedlove from testifying. Consequently, McDowell has not shown prejudice and this ineffective assistance of counsel ground is without merit for that reason as well.

### 3. Multiple-Conspiracies Instruction

Next, McDowell maintains that his trial counsel was ineffective in failing to request a multiple conspiracies instruction. At the time of trial, the Pattern Criminal Jury Instructions for the Seventh Circuit did not include such an instruction, but the current version includes the following instruction:

> **5.10(B) SINGLE CONSPIRACY VS. MULTIPLE CONSPIRACIES**
>
> Count ___ charges that there was a single conspiracy. The defendant contends that [there was more than one conspiracy; other defense contention].

If you find that there was more than one conspiracy and that the defendant was a member of one or more of those conspiracies, then you may find the defendant guilty on Count ___ only if the [conspiracy; conspiracies] of which he was a member was a part of the conspiracy charged in Count ___.

> The government is not required to prove the exact conspiracy charged in the indictment, so long as it proves that the defendant was a member of a smaller conspiracy contained within the charged conspiracy.

Pattern Criminal Jury Instructions of the Seventh Circuit 5.10(B) (2012). McDowell does not

8

contend that had his counsel tendered an instruction like this he would have been acquitted on Count I. Instead, he argues that had his attorney tendered such an instruction it would have been given and it would have resulted in a much lower sentencing range.

McDowell has not, however, demonstrated a reasonable probability that but for counsel's purported error, the result of the proceeding would have been different. The guilty verdict form for Count I included a provision requiring the jury to:

> find beyond a reasonable doubt that the amount of the mixtures containing heroin that [McDowell] conspired to distribute or to possess with intent to distribute is [check only one box]:
>
> 1 Kilogram or more of mixtures containing heroin ☐
>
> 100 grams or more of mixtures containing heroin ☐
>
> Less than 100 grams of mixtures containing heroin ☐

Had the jury accepted McDowell's testimony that he conspired only with Harris to distribute heroin on the six occasions charged in counts III, IV, X, XI, XIV, and XXII–which entailed deliveries of heroin in a combined total of 100.02 grams–it would have checked the second box. Instead, based on the overwhelming evidence that McDowell also conspired to distribute heroin with Cooper, Presley, Breedlove, and others, the jury found that he conspired to distribute 1 kilogram or more of heroin. Therefore, McDowell has not demonstrated the prejudice prong of the Strickland test necessary to sustain this ground of asserted ineffective assistance of counsel.

### 4. Impermissible Amendment

Next, McDowell maintains that his counsel was ineffective when he failed to object to the following answer to the following question posed by the jury during its deliberations:

> [Question]: 2. To charge a person for count one, does it necessarily imply that all 11 points apply to each defendant[?]
>
> [Answer]: The answer to question two is 'no.' To understand the conspiracy elements instruction, it should be modified from 'First, that the conspiracy charged in Count I existed' to 'First, that the conspiracy charged in *paragraph one of* Count I existed.'

McDowell contends that this answer constituted an impermissible amendment of the indictment.

This contention fails on both prongs of Strickland. First, McDowell's counsel did object, both orally and in writing. Specifically, counsel filed a "motion to file supplemental instruction" urging the court to answer question two by directing the jury to follow the law as they have been instructed by the court citing United States v. Span, 170 F.3d 798 (7th Cir. 1999). See United States v. McDowell, No. 10 CR 50078-1, Dkt. No. 256, at *7 (Jun. 13, 2012). The government urged the court to instead follow the Seventh Circuit's decision in United States v. Franco, 874 F.2d 1136 (7th Cir. 1989), in answering the jury's question. When the court asked counsel if anyone objected to following Franco, one of McDowell's attorneys said:

> We would just ask that the jury be instructed -- because the instruction is a pattern

9

> instruction, because at least in part the government has contributed to the misunderstanding to the extent that it exists in the jury's mind, that any confusion has been entered into the jury's mind, you know, is -- we think the appropriate instruction has already been given and that the jurors should first be referred back to the instructions as they've been given by the court.

Under these circumstances McDowell cannot credibly argue that his counsel was deficient for failing to object to the court's proposed answer to the jury's question.

Second, even assuming for argument's sake that McDowell's counsel failed to object to the court's answer, McDowell would not have suffered prejudice because he has not demonstrated that the court's answer was an improper amendment of the indictment. Paragraphs 2 through 11 of Count I of the third superseding indictment were allegations of overt acts that were part of the conspiracy to distribute heroin, but were not essential elements of that crime that the government was required to prove. See United States v. Duran, 407 F.3d 828, 835 (7th Cir. 2005) ("Proving a conspiracy under 21 U.S.C. § 846 requires that (1) two or more people agreed to commit an unlawful act and (2) the defendant knowingly and intentionally joined in that agreement. No overt act is required." (quotation marks omitted)); see also United States v Leichtnam, 948 F.2d 370, 377 (7th Cir. 1991) ("[I]f the indictment charges a conspiracy and lists overt acts, but it's not necessary to prove the overt acts to prove the conspiracy. . ., then jury instructions that do not demand proof of the overt acts do not impermissibly amend the indictment."); Franco, 874 F.2d at 1144 ("The district court correctly stated the law and did not constructively amend the indictment by removing from the jury's consideration elements of the count. Under 21 U.S.C. § 846, the government is not required to allege or prove an overt act in furtherance of the conspiracy as is required under the general conspiracy statute, 18 U.S.C. § 371. The government had the burden of proving that a conspiracy existed and that [defendant] knowingly and intentionally joined it. The court's supplemental instructions merely reemphasized this point." (citation omitted)). Accordingly, this court's response to the jury's question was an accurate statement of the law on drug distribution conspiracies and not an impermissible amendment of the indictment.

For these reasons, McDowell's counsel was not ineffective on the ground that he failed to object to the court's answer to the question posed by the jury as an impermissible amendment of the indictment.

### B. Due Process

Lastly, McDowell argues that he was denied due process and a fair trial because the government presented Breedlove's testimony at trial when it purportedly knew or should have known that his mental state rendered him incompetent. Initially, the government contends that McDowell is barred from raising this ground in a § 2255 motion because it could have been raised on direct appeal and McDowell has not demonstrated cause for failing to do so and resulting prejudice. The court agrees. See Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that if a § 2255 petitioner does not raise a claim in his direct appeal, that claim is barred unless the petitioner can demonstrate cause for the procedural default and actual prejudice). In fact, in his reply brief, McDowell does not even respond to the government's contention that this ground is barred.

Nevertheless, this ground also fails on the merits. As explained above, there is nothing which indicates that Breedlove was suffering from a mental disease or defect that rendered him incompetent to testify during the trial. Moreover, even if Breedlove was suffering from such a condition during the trial, there is nothing that indicates that the government was contemporaneously aware of his condition. Furthermore, in light of the substantial evidence presented at trial apart from Breedlove's testimony, any error arising from the admission of his testimony was harmless beyond a reasonable doubt such that it could not have deprived McDowell of a fair trial. See Chapman v. California, 386 U.S. 18, 24 (1967) (holding that a constitutional error is harmless if it can be shown, beyond a reasonable doubt, "that the error complained of did not contribute to the verdict obtained"); see also United States v. Dickerson, 705 F.3d 683, 691 (7th Cir. 2013) ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." (quotation marks omitted)).

### C. Motion for Leave to Conduct Discovery and Request for Evidentiary Hearing

McDowell has moved for limited discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings in the District Courts. Specifically he seeks records of the Ogle and Boone and Ogle County Sheriffs and the U.S. Marshal's Service related to incidents bearing on Breedlove's behavior and mental or emotional stability while in their custody. McDowell also seeks an evidentiary hearing on his § 2255 motion.

Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure." Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quotation marks omitted). In contrast, "[g]ood cause cannot exist where the facts alleged do not provide a basis for relief." Matta-Ballesteros v. Henman, 896 F.2d 255, 259 (7th Cir. 1990). McDowell has not explained why he believes there are records held by these agencies that will reveal that Breedlove was exhibiting signs of mental illness while he was being held in their custody rendering him incompetent to testify at the trial. In any event, in light of this court's determination that the evidence against McDowell was overwhelming apart from Breedlove's trial testimony, any shortcoming on his counsel's part to discover evidence concerning Breedlove's mental or emotional condition would not alter this court's determination that McDowell has not shown the requisite prejudice. As such, development of the facts McDowell hopes to discover will not provide a basis for relief.

A § 2255 movant "is entitled to an evidentiary hearing on his claim where he alleges facts that, if true, would entitle him to relief." Lafuente v. United States, 617 F.3d 944, 946 (7th Cir. 2010). "A hearing, though, is not required when 'the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Id. (quoting 28 U.S.C. § 2255(b)). As detailed in this order, and after a thorough review of the record and arguments of the parties, the court has concluded that all of McDowell's § 2255 claims fail either factually, because the record belies his allegations or does not show what he alleges it shows, or legally, because even if his factual allegations are presumed to be true they do not amount to a constitutional violation. Accordingly, McDowell has not established the need for an evidentiary hearing.

## III. CONCLUSION

      For the reasons set forth above, McDowell's motion to set aside, modify, or vacate the sentence pursuant to § 2255 is denied. In accordance with Rule 11(a) of the Rules Governing Section 2255 Cases, the court must consider whether to grant a certificate of appealability. Based on the foregoing analysis, McDowell has not established that reasonable jurists could debate the correctness of this court's decision. Accordingly, the court declines to issue a certificate of appealability.

Date: 5/13/2016                                        ENTER:

                                                                              FREDERICK J. KAPALA

                                                                              District Judge